James C. Shah (SBN 260435)
jcshah@millershah.com
Kolin C. Tang (SBN 279834)
kctang@millershah.com
MILLER SHAH LLP
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Phone: 866-540-5505
Fax: 866-300-7367

Timothy N. Mathews (*pro hac vice*)
tnm@chimicles.com
Zachary P. Beatty (*pro hac vice*)
zpb@chimicles.com
CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP
361 West Lancaster Avenue
Haverford, PA 19041
Phone: 610-642-8500
Fax: 610-649-3633

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOSS KRIVIN, et al., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>PENSKE MEDIA CORPORATION,<br><br>        Defendant. | Case No. 2:25-cv-05803-AB (PVCx)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Motion Hearing: March 27, 2026<br>10:00 a.m.<br><br>Hon. André Birotte, Jr. |

**TABLE OF CONTENTS**

I.      Introduction............................................................................................................1

II.     Summary of the Action and Settlement Negotiations .........................................1

III.    Settlement Terms ...................................................................................................3

        A.      The Settlement Class Definition .................................................................3

        B.      Settlement Benefits.....................................................................................3

        C.      Claims Process ...........................................................................................3

        D.      Notice to the Class......................................................................................4

        E.      Settlement Class Release.............................................................................5

        F.      Settlement Class Members Ability to Opt-Out or Object ...........................5

        G.      Attorneys' Fees, Costs, and Expenses.........................................................5

        H.      Proposed Class Representative Service Awards.........................................6

IV.     The Court Should Grant Preliminary Approval of the Settlement .........................6

        A.      The Court Should Preliminarily Find that the Settlement is Fair,
                Reasonable, and Adequate Pursuant to Rule 23(e)(2)..................................7

        B.      Plaintiffs and Class Counsel Have Adequately Represented
                the Settlement Class ...................................................................................8

        C.      The Proposed Settlement is the Result of Arm's-length
                Negotiation Among Experienced Counsel....................................................9

        D.      The Relief Provided for the Class is More Than Adequate ..........................9

                1.      The Settlement accounts for the costs, risks, and
                        delay of trial and appeals ................................................................10

                2.      The Settlement provides for an effective method of
                        processing claims and distributing relief to the
                        Settlement Class Members...............................................................11

                3.      The terms of the proposed award of attorneys'
                        fees are reasonable .........................................................................12

        E.      The Settlement Treats All Class Members Equitably ................................14

V.      The Court Should Conditionally Certify the Class ..............................................15

        A.      The Settlement Class is Adequately Defined.............................................15

B.    The Settlement Class Satisfies the Requirements of Rule 23(a) ................. 16

    1.    The Settlement Class members are too numerous to be joined ......... 16

    2.    There are common questions of law and fact ................................... 16

    3.    Plaintiffs' claims are typical of the Settlement Class ....................... 16

    4.    Plaintiffs and Class Counsel have and will fairly and
        adequately protect the interests of the class ..................................... 17

C.    The Settlement Class Meets the Requirements
    of Rule 23(b)(3) ...................................................................................... 17

VI.    The Court Should Approve the Proposed Form and
Method of Class Notice ................................................................................... 19

VII.    Proposed Schedule of Settlement Events ........................................................ 20

VIII.    Conclusion ....................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Aikens v. Cisneros*,
2019 U.S. Dist. LEXIS 131939 (C.D. Cal. July 31, 2019)..............................................20

*Alvarez v. Sirius XM Radio Inc.*,
2020 U.S. Dist. LEXIS 235043 (C.D. Cal. July 15, 2020)..............................................13

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
568 U.S. 455 (2013)..............................................21

*Ballew v. Huuuge, Inc.*,
2025 U.S. Dist. LEXIS 8922 (C.D. Cal. Jan. 15, 2025)..............................................11

*Barr v. SelectBlinds LLC*,
2024 U.S. Dist. LEXIS 39068 (C.D. Cal. Mar. 4, 2024)..............................................17

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ..............................................11, 14

*Brightk Consulting Inc. v. BMW of N. Am., LLC*,
2023 U.S. Dist. LEXIS 168723 (C.D. Cal. Sep. 12, 2023) ..............................................15

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) ..............................................16

*Burnell v. Swift Transp. Co. of Ariz., LLC*,
2022 U.S. Dist. LEXIS 78763 (C.D. Cal. Apr. 28, 2022)..............................................16

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ..............................................8, 17

*Carmona v. Dominos Pizza LLC*,
2025 U.S. Dist. LEXIS 268838 (C.D. Cal. Dec. 22, 2025)..............................................22

*Chalian v. CVS Pharmacy, Inc.*,
2021 U.S. Dist. LEXIS 274593 (C.D. Cal. July 16, 2021)..............................................17

*Churchill Vill., L.L.C. v. GE*,
361 F.3d 566 (9th Cir. 2004) ..............................................9, 12, 22

*Davis v. Clients on Demand, LLC*,
2025 U.S. Dist. LEXIS 216490 (C.D. Cal. Sep. 2, 2025) ..............................................23

*In re GEICO Gen. Ins. Co.*,
    2022 U.S. Dist. LEXIS 134404 (N.D. Cal. July 28, 2022) ....................................19, 21

*Hang v. Old Dominion Freight Line, Inc.*,
    2024 U.S. Dist. LEXIS 87809 (C.D. Cal. May 14, 2024)............................................12

*Hashemi v. Bosley, Inc.*,
    2022 U.S. Dist. LEXIS 119454 (C.D. Cal. Feb. 22, 2022) ..........................................11

*Hellyer v. Smile Brands Inc.*,
    2024 U.S. Dist. LEXIS 8099 (C.D. Cal. Jan. 16, 2024)...............................................16

*Hoover v. Asm Glob. Parent, Inc.*,
    2025 U.S. Dist. LEXIS 171808 (C.D. Cal. Sep. 3, 2025) .......................................22, 23

*Hung V. Vu, D.D.S. v. I Care Credit, LLC*,
    2022 U.S. Dist. LEXIS 201639 (C.D. Cal. Nov. 4, 2022) ...........................................10

*Jerry Beeman & Pharmacy Servs. v. TDI Managed Care Servs.*,
    2016 U.S. Dist. LEXIS 197191 (C.D. Cal. Nov. 9, 2016) ...........................................18

*Lopez v. NLP, LLC*,
    2025 U.S. Dist. LEXIS 270892 (C.D. Cal. Dec. 4, 2025)................................15, 18, 19

*Martin v. Toyota Motor Credit Corp.*,
    2022 U.S. Dist. LEXIS 154677 (C.D. Cal. July 13, 2022)...........................................19

*McCaleb v. DT Credit Co., LLC*,
    2015 U.S. Dist. LEXIS 68540 (C.D. Cal. May 26, 2015).............................................13

*McDaniel v. Toshiba Glob. Commerce Sols., Inc.*,
    2025 U.S. Dist. LEXIS 198678 (C.D. Cal. Oct. 3, 2025) .............................................13

*McKinney-Drobnis v. Oreshack*,
    16 F.4th 594 (9th Cir. 2021) ........................................................................................14

*Plaintiffs v. Hyundai Motor Co. Defendants*,
    2022 U.S. Dist. LEXIS 215046 (C.D. Cal. Oct. 20, 2022) ..........................................14

*Plaintiffs' Consumer Class v. Hyundai Motor Co.*,
    2026 U.S. App. LEXIS 425 (9th Cir. Jan. 8, 2026)........................................................9

*Rampley v. Bear Valley Cmty. Healthcare Dist.*,
    2023 U.S. Dist. LEXIS 245293 (C.D. Cal. Oct. 19, 2023) ..........................................12

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) ......................................................................17

*Ruffulo v. Farmers Ins. Exch.*,
  2026 U.S. Dist. LEXIS 4732 (C.D. Cal. Jan. 5, 2026) ...................................19

*Scurlock v. Syneos Health United States, Inc.*,
  2025 U.S. Dist. LEXIS 216076 (C.D. Cal. Apr. 7, 2025) ..............................22

*Slaven v. BP Am., Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000)..................................................................18

*Smith v. Apple, Inc.*,
  2025 U.S. Dist. LEXIS 83589 (N.D. Cal. May 1, 2025)................................15

*In re Stable Rd. Acquisition Corp. Sec. Litig.*,
  2024 U.S. Dist. LEXIS 237260 (C.D. Cal. Apr. 23, 2024) ............................12

*Torres v. Pet Extreme*,
  2015 U.S. Dist. LEXIS 5136 (E.D. Cal. Jan. 14, 2015) .................................14

*Wahl v. Yahoo! Inc.*,
  2018 U.S. Dist. LEXIS 195287 (N.D. Cal. Nov. 15, 2018) ...........................10

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)......................................................................................19

*Washburn v. Porsche Cars N. Am., Inc.*,
  2025 U.S. Dist. LEXIS 65093 (W.D. Wash. Apr. 4, 2025) ...........................12

*Zubia v. Shamrock Foods Co.*,
  2017 U.S. Dist. LEXIS 223446 (C.D. Cal. Dec. 21, 2017)...................18, 20, 21, 22

**STATUTES**

28 U.S.C. § 1715...............................................................................................5, 6, 24

Cal. Civ. Code § 1750, *et seq.*......................................................................2, 12, 19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23...............................................................................................*passim*

## I.      Introduction

Plaintiffs respectfully submit this memorandum of law in support of the parties' joint motion for preliminary approval of a proposed nationwide class action settlement of this action.

Plaintiffs allege in this lawsuit that in or around June 2024 Defendant, Penske Media Corporation ("PMC"), wrongfully discontinued delivery of *Rolling Stone* Magazine to persons who purchased "lifetime" subscriptions to the magazine that were sold in the early 2000s.[1]  Under the proposed Settlement, PMC will send direct notice via postcard and email and resume delivery of *Rolling Stone* Magazine to each Settlement Class Member who requests it, continuing for their lifetime so long as *Rolling Stone* Magazine continues to be published. Settlement Class Members can submit requests by email, by telephone, or online, and there is <u>no</u> deadline. In addition, Settlement Class Members can request and receive two years of free access to RollingStone.com, which is a separate subscription-based digital news platform that currently costs around $95.88 per year.

The Settlement provides excellent, nearly full relief and is the result of vigorous arm's-length negotiation and mediation with Judge Sundvold (Ret.), a highly experienced and respected JAMS mediator. Plaintiffs respectfully request that the Court grant preliminary approval under Rule 23, approve the plan of notice to the Settlement Class and order dissemination of notice, schedule a final Fairness Hearing, and approve the proposed interim deadlines set forth in the parties' proposed Preliminary Approval Order ("PAO").

## II.      Summary of the Action and Settlement Negotiations

In the early 2000s, Rolling Stone heavily promoted a "Lifetime Subscription deal" for $99. ECF No. 1 ("Compl.") ¶ 15. For example, advertisements placed inside the magazine stated, "THE LONGER YOU LIVE, THE MORE YOU SCREW US OVER." *Id.*

---

[1] Unless otherwise stated or defined, all capitalized terms used herein have the definitions provided in the Class Action Settlement Agreement filed herewith ("Agreement" or "SA ¶"), which is attached to the concurrently filed Declaration of Timothy N. Mathews ("Mathews Decl.") as Exhibit A.

1

For approximately 20 years, Rolling Stone honored its obligation to send print copies of the magazine to lifetime subscribers. *Id.* ¶ 16. In May 2024, however, PMC announced that it would no longer deliver printed copies of the magazine to its lifetime subscribers but instead would provide them only an "e-Edition" of the magazine, which is similar to a PDF of the magazine.[2] *Id.* ¶¶ 18, 24, 25.

Plaintiffs attempted to resolve the claims prior to filing this action through a pre-suit notice of claims and demand for relief and subsequent communications with PMC's in-house counsel, but they were not successful. Mathews Decl. ¶ 5.

Plaintiffs filed the Complaint on June 25, 2025, asserting nationwide claims against PMC for breach of contract and violations of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* Mathews Decl. ¶¶ 4-7; Compl. ¶¶ 83-107. After filing the Complaint, Plaintiffs and Defense Counsel also engaged in direct discussions regarding a potential settlement, but those did not result in a settlement. Mathews Decl. ¶ 8. Accordingly, the parties agreed to mediate with the assistance of Judge Sundvold. *Id.* ¶ 10.

The parties exchanged information and submitted confidential mediation briefs to Judge Sundvold prior to the mediation. *Id.* ¶ 12-14. Then, on November 24, 2025, the parties participated in a full-day mediation with Judge Sundvold. *Id.* ¶ 15. During the mediation, the parties first agreed on all the terms of relief to Settlement Class Members and notice parameters before they began discussing or negotiating attorneys' fees and costs or Class Representative Service Awards. *Id.* ¶¶ 15, 18. Ultimately, the parties reached agreement on these latter terms set forth in a mediator's proposal at the conclusion of the mediation. *Id.* ¶ 18. Subsequently, the parties negotiated and drafted the Agreement and its exhibits. *Id.* ¶ 20. The Settlement was fully executed on February 24, 2026. *Id.*

---

[2] The e-Edition is *not* a subscription to RollingStone.com, which is an entirely separate subscription service. Compl. ¶ 25.

## III.    Settlement Terms

### A.    The Settlement Class Definition

The Settlement Class includes "all subscribers to *Rolling Stone* Magazine living in the United States who purchased a so-called 'lifetime' subscription." SA ¶¶ 1.31, 1.32. Excluded from the Class are: PMC and its current officers, directors, employees, subsidiaries, and affiliates; all judges assigned to this case and any members of their immediate families; and the parties' counsel in this litigation. SA ¶ 1.31.

The Settlement Class includes approximately 15,450 members. SA ¶ 3.7.

### B.    Settlement Benefits

Under the Settlement, Settlement Class Members may elect to receive one or both of the following.

First, Settlement Class Members can elect to resume receiving the print edition of *Rolling Stone* Magazine for as long as printed editions continue to be published during their lifetime.[3] SA ¶ 3.1.

Second, Settlement Class Members can elect to receive two years of free access to RollingStone.com (so long as RollingStone.com is still being published). SA ¶ 3.1. RollingStone.com is a subscription-based news media platform that currently costs $7.99/month; it is a separate and distinct service with differing content from the print version of *Rolling Stone* Magazine and the *Rolling Stone* Magazine E-Edition. SA ¶ 1.25; Mathews Decl. ¶ 16.[4]

### C.    Claims Process

Accessing the Settlement benefits is simple. Settlement Class Members can receive either or both benefits by (1) sending an email to settlement@rollingstone.com; (2) calling

---

[3] About 950 Settlement Class Members previously contacted Rolling Stone, and PMC has already resumed delivering print copies to them. SA ¶ 3.7. These Class Members do not need to submit a further request to continue receiving the magazine.

[4] The Settlement also provides that if *Rolling Stone* Magazine is no longer published in print, but the e-Edition continues to be published, then Settlement Class Members will continue to receive the *Rolling Stone* Magazine e-Edition for their lifetimes or until the e-Edition ceases to be published. SA ¶ 3.4.

3

800-552-3632; or (3) submitting a request via an online portal at www.Krivin-rs.com, which will also be linked through the Settlement Website. SA ¶ 3.11. Class Members need only provide their name, email address, and mailing address to opt-in. SA ¶ 3.11. There is no documentation requirement, and there is no deadline by which Class Members must submit their request to receive Settlement benefits; they may do so at any time. SA ¶ 3.12.

### D.    Notice to the Class

PMC will serve as the Settlement Administrator with the assistance of CDS Global, which is a subscription management and order fulfillment company. SA ¶¶ 1.8, 3.5.[5]

PMC will send direct Short Form Notices to Settlement Class Members in two mediums. First, PMC will mail a 4¼x6 inch postcard Short Form Notice to their last-known subscription address, as updated through the USPS's National Change of Address database. SA ¶ 3.7 & Exs. 1-2. Second, PMC will email the Short Form Notice to each Settlement Class Member's last known email reflected in PMC's records. *Id.*

There are two forms of Short Form Notice, which are Exhibits 1 and 2 to the Settlement. SA ¶ 3.7. Exhibit 1 will be sent to approximately 14,500 Class Members who are not currently receiving *Rolling Stone* Magazine. SA ¶ 3.7. Exhibit 2 is a tailored Short Form Notice that will be sent to the approximately 950 Class Members who have already requested and are currently receiving the print edition of *Rolling Stone* Magazine. SA ¶ 3.7.

Both forms of Short Form Notice provide instructions on how to opt in to Settlement benefits, explain the Settlement Class Members' rights to object or exclude themselves, and provide information regarding the final Fairness Hearing. SA Exs. 1-2. The Short Form Notices also direct Class Members to the Settlement Website for the Long Form Notice (Ex. 3) and additional information about the Settlement.

PMC will also establish a Settlement Website that will contain information about the Settlement, including a copy of the Agreement, the Long Form Notice, pertinent deadlines, instructions on how to submit a claim, and how to contact PMC and Class Counsel. SA ¶ 3.8.

---

[5] *See also* https://www.cds-global.com/about-us.

In compliance with the Class Action Fairness Act, 28 U.S.C. § 1715, within ten days of filing this motion for preliminary approval, PMC will provide notice of the Settlement to the Attorney General of the United States and the Attorneys General of each state in which a known Settlement Class Member resides. SA ¶ 3.6.

Class Counsel will also have oversight of PMC's administration of the Settlement. *See* SA ¶ 3.17. Specifically, PMC will provide Class Counsel with monthly status reports reflecting the number of notices mailed and emailed, the number of those returned undeliverable, and the number of claims received. *Id.*

**E.    Settlement Class Release**

The class-wide release under the Settlement is fair and appropriately tailored to the claims against the Released Parties that were or could have been asserted relating to lifetime subscriptions to *Rolling Stone* Magazine. SA ¶ 5.2.

**F.    Settlement Class Members Ability to Opt-Out or Object**

The Settlement provides, and establishes deadlines and procedures, for the right of Settlement Class Members to: (a) opt-out or exclude themselves from the Settlement Class and Settlement, or (b) object to the Settlement or Class Counsel's motion for Attorneys' Fees and Costs Award. SA ¶¶ 3.13-3.15, 4.2-4.3. These procedures and deadlines are set forth in detail and summary form in the Short Form Notice and Long Form Notice (SA Exs. 1-3) and will also appear on the Settlement Website. SA ¶ 4.3.

Further, Plaintiffs' motions in support of final approval of the Settlement and for Attorneys' Fees and Costs Award will be filed with the Court and put on the Settlement Website in advance of the opt-out and objection deadline. *See* SA ¶¶ 1.16-1.19; PAO ¶ 30.

**G.    Attorneys' Fees, Costs, and Expenses**

In addition to and without reducing any of the other Settlement benefits, PMC also agrees to pay Attorneys' Fees and Costs Award of $525,000, subject to Court approval. SA ¶ 6.1. Class Counsel will file their motion for Attorneys' Fees and Costs Award prior to the deadline for objections and will at that time set forth all facts supporting their application under the relevant legal standards. *See* PAO ¶ 30. Suffice to say here that this nearly full

relief settlement provides significant economic value that was achieved only through the efforts of and dogged negotiation by Class Counsel, and the requested fee is well within the ranges typically awarded. Finally, the Settlement is not conditioned upon an award of attorneys' fees, costs, expenses, or Service Awards. SA ¶ 1.14.

### H.    Proposed Class Representative Service Awards

Each of the four Plaintiffs has been a dedicated and active participant on behalf of the Settlement Class. Mathews Decl. ¶¶ 6, 21. The Settlement would not have been possible without their efforts. In view of these efforts, PMC has also agreed to pay $2,500 Service Awards to each of the Class Representatives and to provide the back issues they did not receive, which Class Counsel will also ask the Court to approve in their forthcoming fee petition. SA ¶ 7.1.

### IV.    The Court Should Grant Preliminary Approval of the Settlement.

The Ninth Circuit applies a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (cleaned up).

Under Rule 23(e), approval of a class settlement occurs in two steps: preliminary approval and final approval. After the court grants preliminary approval, notice of the proposed settlement and its terms is provided to class members who are then given an opportunity to object to the settlement or opt-out of the class and settlement. Final approval follows.

Here, at the preliminary approval stage, the Court must determine whether "giving notice [to the class] is justified by the parties' showing that the court will *likely* be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B) (emphasis added). Plaintiffs respectfully submit that all the requirements for preliminary approval are met.

**A.    The Court Should Preliminarily Find that the Settlement is Fair, Reasonable, and Adequate Pursuant to Rule 23(e)(2).**

For purposes of determining whether a proposed class action settlement is fair, reasonable, and adequate, Rule 23(e)(2) directs the Court to consider whether "the class representatives and class counsel have adequately represented the class"; "the proposal was negotiated at arm's length"; "the relief provided for the class is adequate" taking into account certain relevant factors; and "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

The Advisory Committee Notes make clear that factors listed under Rule 23(e)(2) "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal" and do not displace the "lists of factors" courts have traditionally applied to assess proposed class settlements. Fed. R. Civ. P. 23(e)(2) (advisory committee's note to 2018 amendment) (hereinafter "2018 Ad. Comm. Notes"). Courts in the Ninth Circuit also evaluate whether a settlement is fair, reasonable and adequate using the traditional approval factors set forth in *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004):

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.[6]

Application of both the Rule 23(e)(2) and the traditional factors demonstrate that the settlement here is fair, reasonable, and adequate, and in the best interests of the class.

---

[6] *Churchill* factor 7 is neutral here because there are no governmental participants. *Churchill* factor 8, reaction of the class members, is premature at this stage because notice has not yet been issued, but Class Counsel will address this factor in their final approval papers.

**B.      Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class.**

Rule 23(e)(2)(A) focuses on "the actual performance of counsel acting on behalf of the class," including whether plaintiff and class counsel "had an adequate information base" before entering the settlement.[7] 2018 Adv. Comm. Notes; *see also Plaintiffs' Consumer Class v. Hyundai Motor Co.*, 2026 U.S. App. LEXIS 425, at *6-7 (9th Cir. Jan. 8, 2026) (cleaned up) ("Formal discovery is not required before class-action parties can make an informed decision about settlement.").

Class Counsel vigorously prosecuted this case and had a deep understanding of the strengths and weaknesses of the Class's claims prior to settling. Class Counsel's understanding was developed by, *inter alia*: extensive investigation of the claims prior to and after filing the Complaint, their identification of early 2000s lifetime subscription advertisements through the Internet Archive, communications sent by Defendant to Plaintiffs and putative Class Members, and other documents cited in the Complaint; analyzing Defendant's answer to the Complaint; and mediation briefing. Mathews Decl. ¶¶ 4, 6-7, 9, 14; *see also Wahl v. Yahoo! Inc.*, 2018 U.S. Dist. LEXIS 195287, at *13 (N.D. Cal. Nov. 15, 2018) (holding that although "little formal discovery has been done," the parties had sufficient information to evaluate the case's strengths and weaknesses because the claim was based on "subscription renewals of class members"); *Hung V. Vu, D.D.S. v. I Care Credit, LLC*, 2022 U.S. Dist. LEXIS 201639, at *22 (C.D. Cal. Nov. 4, 2022) ("Thus, although little formal discovery took place, class counsel conducted a sufficient investigation to come to an informed decision for settlement."). Class Counsel had sufficient information to evaluate the merits of the case and the risks of continued litigation and negotiated outstanding relief for the Class.

Class Counsel have extensive class-action experience. *See* Mathews Decl. ¶¶ 2-3 & Exs. B-C (Firm Resumes). Based on Class Counsel's decades of experience litigating class actions, Class Counsel firmly believe the Settlement is an excellent result for the Class

---

[7] This factor overlaps with the fifth and sixth *Churchill* factors: "the extent of discovery completed and the stage of the proceedings" and "the experience and views of counsel."

Members. *Id.* ¶ 23. As discussed below, Plaintiffs also actively participated in both the litigation and settlement proceedings of this case. *See infra* § V.B.4.

### C. The Proposed Settlement is the Result of Arm's-length Negotiation Among Experienced Counsel.

Rule 23(e)(2)(B) focuses on whether the proposal was negotiated at arm's length and "in a manner that would protect and further the class interests." 2018 Adv. Comm. Notes. The Ninth Circuit has determined the "presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011).

Here, the Settlement was reached after months of negotiation by experienced counsel and an all-day mediation session with a highly respected and experienced independent JAMS mediator, Judge Sundvold. Mathews Decl. ¶¶ 8-19; *Hashemi v. Bosley, Inc.*, 2022 U.S. Dist. LEXIS 119454, at *16 (C.D. Cal. Feb. 22, 2022) (finding arm's-length negotiations where the parties "negotiated the Settlement over several months prior to mediation and ultimately reached a final agreement only after arms-length negotiations before [the] mediator"); *Ballew v. Huuuge, Inc.*, 2025 U.S. Dist. LEXIS 8922, at *34 (C.D. Cal. Jan. 15, 2025) ("[B]ecause the Settlement was reached through the assistance of a neutral mediator and after informal discovery, the Court is persuaded that the Settlement was reached as a result of arms-length negotiation.").

### D. The Relief Provided for the Class is More Than Adequate.

Rule 23(e)(C) instructs the Court to consider "whether the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; and (iii) the terms of any proposed award of attorney's fees, including timing of payment."[8]

Here, the Settlement provides nearly full relief for the Class. It is an excellent outcome, especially considering the costs, risks, and delays that would occur absent

---

[8] Here, there are no additional agreements to be identified under Rule 23(e)(3).

9

settlement. The claims process is fair and straightforward, and the terms of the proposed attorneys' fees are fair and reasonable.

### 1. The Settlement accounts for the costs, risks, and delay of trial and appeals.

Rule 23(e)(C)(i) instructs the Court to consider the relief taking into account the costs, risks, and delay of trial and appeal. This subsection subsumes several of the *Churchill* factors: [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; and [4] the amount offered in settlement. *See In re Stable Rd. Acquisition Corp. Sec. Litig.*, 2024 U.S. Dist. LEXIS 237260, at *20 n.6 (C.D. Cal. Apr. 23, 2024). The "test of a settlement is not the maximum amount that the plaintiffs might have recovered, but, rather, whether the settlement is within a reasonable range" considering "the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Hang v. Old Dominion Freight Line, Inc.*, 2024 U.S. Dist. LEXIS 87809, at *12 (C.D. Cal. May 14, 2024) (quoting *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965-66 (9th Cir. 2009)).

Plaintiffs believe their claims are strong—as reflected in the excellent relief they negotiated. SA ¶ 3.1. Nevertheless, absent settlement, Plaintiffs would face litigation risks, as well as time-consuming and expensive litigation, as PMC has asserted numerous defenses. *See, e.g.*, *Rampley v. Bear Valley Cmty. Healthcare Dist.*, 2023 U.S. Dist. LEXIS 245293, at *16 (C.D. Cal. Oct. 19, 2023) (citation omitted) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). To prevail, Plaintiffs would need to obtain nationwide class certification on their breach of contract claim or the CLRA claim, then survive motions for summary judgment, and then prevail at trial and any subsequent appeal. PMC would have contested liability at every step and fought hard against class certification. *See, e.g.*, *Washburn v. Porsche Cars N. Am., Inc.*, 2025 U.S. Dist. LEXIS 65093, at *18 (W.D. Wash. Apr. 4, 2025) ("Plaintiff faced the additional risk of maintaining class

certification through trial in the face of Defendant's fierce opposition.... Moreover, even if Plaintiff successfully obtained class certification and prevailed at trial in the district court, the risk of one or more lengthy appeals would be high.").

Even if Plaintiffs succeeded at every stage, it likely would have taken several years. By comparison, the proposed settlement provides valuable, certain, and prompt relief to the Class Members. *McCaleb v. DT Credit Co., LLC*, 2015 U.S. Dist. LEXIS 68540, at *15 (C.D. Cal. May 26, 2015) (quoting *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013)) ("The settlement, therefore, provides Class Members with another significant benefit that they would not receive if the case proceeded—certain and prompt relief.").

### 2. The Settlement provides for an effective method of processing claims and distributing relief to the Settlement Class Members.

Rule 23(e)(C)(i) instructs the Court to consider the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims. Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." 2018 Adv. Comm. Notes.

Submitting a claim here is extremely easy. Settlement Class Members need only contact PMC via its dedicated email address, dedicated telephone number, *or* respond through on online portal and provide their name, email address, and mailing address. SA ¶ 3.11. There is no documentation requirement and no deadline for submitting claims. SA ¶ 3.12; *see, e.g.*, *Alvarez v. Sirius XM Radio Inc.*, 2020 U.S. Dist. LEXIS 235043, at *16 (C.D. Cal. July 15, 2020) (approving claims process where inactive lifetime subscribers to Sirius radio were required to log on to the settlement website and submit a claim for re-activation of their lifetime subscription); *McDaniel v. Toshiba Glob. Commerce Sols., Inc.*, 2025 U.S. Dist. LEXIS 198678, at *19 (C.D. Cal. Oct. 3, 2025) (claims process "straightforward" where claims could be submitted by mail or email with or without documentation).

11

PMC will provide Class Counsel with monthly reports on the number of notices mailed and emailed, the number returned as undeliverable, and the number of claims received. SA ¶ 3.17; *see also Torres v. Pet Extreme*, 2015 U.S. Dist. LEXIS 5136, at *15 (E.D. Cal. Jan. 14, 2015) (granting final approval where "[d]efendant has agreed to self-administer the settlement and claims process increasing the funds available to the class members"); *Plaintiffs v. Hyundai Motor Co. Defendants*, 2022 U.S. Dist. LEXIS 215046, at *31 (C.D. Cal. Oct. 20, 2022) (granting preliminary approval where one defendant "elect[ed] to self-administer the Settlement").

**3.      The terms of the proposed award of attorneys' fees are reasonable.**

Rule 23(e)(C)(i) also instructs the Court to consider whether the relief is adequate considering the proposed fee award and timing of payment. At this preliminary stage the Court does not approve the fees or expenses. Rather, it only needs to determine that providing notice to the Settlement Class Members is justified. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). The Ninth Circuit has indicated that in making this determination, the Court should also consider whether there was any collusion between class counsel and defendant, i.e., whether "class counsel have allowed pursuit of their own self-interests ... to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). There are three subtle signs of collusion the Court should consider: "(1) when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607-08 (9th Cir. 2021) (cleaned up).

Under the Settlement, Class Counsel will seek up to $525,000 in attorneys' fees and litigation expenses. SA ¶ 6.1. This amount represents less than a 1.5x multiple of Class Counsel's current lodestar, which is well within the range of reasonableness in the Ninth Circuit, and Class Counsel will continue expending time and resources into, e.g., the claims

12

process and seeking final approval. *Smith v. Apple, Inc.*, 2025 U.S. Dist. LEXIS 83589, at *24 (N.D. Cal. May 1, 2025).

Further, although there is a clear-sailing provision and, practically speaking, a reverter of any attorneys' fees not awarded, collusion was not and is not present here. This is not a common-fund settlement in which attorneys' fees diminish class recovery. The fee award here is separate from and will not diminish the benefits to the Class. SA ¶¶ 3.1, 6.1; *see also, e.g.*, *Brightk Consulting Inc. v. BMW of N. Am., LLC*, 2023 U.S. Dist. LEXIS 168723, at *22-23 (C.D. Cal. Sep. 12, 2023) ("Because the Settlement Agreement does not use a common fund, the fee award will not reduce the benefits to the Class, which, in conjunction with the reasonableness of the fees sought, mitigates collusion concerns."); *Lopez v. NLP, LLC*, 2025 U.S. Dist. LEXIS 270892, at *37 (C.D. Cal. Dec. 4, 2025) (approving settlement even though there was a "clear sailing provision" because the settlement had no other signs of collusion and the settlement did not depend on the amount or timing of attorneys' fees).

Importantly, Class Counsel will not receive a "disproportionate distribution of the settlement." Class Counsel's request for $525,000 Attorneys' Fees and Costs Award is modest compared to the benefits that Class Counsel negotiated for the Class. There are approximately 15,450 Settlement Class Members, each of whom is entitled to receive: (1) print copies of *Rolling Stone* Magazine, which currently costs $59.88 per year, for their lifetime as long as it continues to be published, and (2) two years of free access to RollingStone.com, which currently costs $95.88 per year. Mathews Decl. ¶ 16. Even assuming just three years of magazine delivery plus the two years of online access, the total value of the Settlement exceeds $5.7 million. If *Rolling Stone* Magazine continues to be published well into the future—as it has been for decades—the value is exponentially higher. Thus, the negotiated fee is *significantly less* than the 25% benchmark based on the economic value of the Settlement. *Burnell v. Swift Transp. Co. of Ariz., LLC*, 2022 U.S. Dist. LEXIS 78763, at *10 (C.D. Cal. Apr. 28, 2022) ("[T]he Court is approving plaintiffs' attorneys' fees equal to 25% of the Gross Settlement Amount, which is consistent with the

Ninth Circuit 'benchmark' and not disproportionate to the class recovery."); *cf. Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021) (collusion possible where attorneys received $7 million and the class received less than $1 million).

Finally, the attorneys' fees were negotiated only after all relief to the class members was agreed and the amount was agreed based on the neutral mediator's proposal. Mathews Decl. ¶¶ 15-19; *see also, e.g.*, *Hellyer v. Smile Brands Inc.*, 2024 U.S. Dist. LEXIS 8099, at *6-7 (C.D. Cal. Jan. 16, 2024) ("There is no fraud or collusion underlying this Settlement, and it was reached as a result of extensive arm's-length negotiations, occurring over the course of several months and mediation with a respected mediator."). Class Counsel did not bargain away class benefits for "red-carpet treatment on fees." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1127 (9th Cir. 2020). The terms of the proposed attorneys' Fees and Expense Award are reasonable.

### E.    The Settlement Treats All Class Members Equitably.

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement provides uniform relief to all Settlement Class Members: each is eligible to receive print copies of *Rolling Stone* Magazine for their lifetime and two years of free access to RollingStone.com. SA ¶ 3.1; *see Chalian v. CVS Pharmacy, Inc.*, 2021 U.S. Dist. LEXIS 274593, at *74 (C.D. Cal. July 16, 2021) ("The Settlement does not give preferential treatment to any subset of the class.").

Moreover, the Service Awards are immanently reasonable. Service awards "are fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Here, because each Class Representative has been a dedicated and active participant on behalf of the Settlement Class, Class Counsel will request that each Class Representative be awarded

a modest $2,500 award plus copies of back issues that were not delivered to them.[9] SA ¶ 7.1; Mathews Decl. ¶¶ 6, 21. The requested award, therefore, falls at the lower end of the range of service awards routinely approved. *See, e.g.*, *Barr v. SelectBlinds LLC*, 2024 U.S. Dist. LEXIS 39068, at *32-33 (C.D. Cal. Mar. 4, 2024) ("Though the Ninth Circuit has not set a benchmark for the amount of incentive awards, awards ranging from $2,000 and $10,000 have found to be reasonable, with many district courts treating $5,000 as 'presumptively reasonable.'"); *Lopez*, 2025 U.S. Dist. LEXIS 270892, at *41 (holding service awards not unduly preferential when within the standard range).

## V.   The Court Should Conditionally Certify the Class.

At this stage of the case, the Court need only preliminarily determine that class treatment is appropriate under Rules 23(a) and (b)(3) to conditionally certify the Settlement Class for the purpose of giving notice. *See* PAO ¶ 7.

### A.   The Settlement Class is Adequately Defined.

Ascertainability, which is an implied requirement of Rule 23, requires that the class be defined with reference to objective criteria. *See, e.g.*, *Zubia v. Shamrock Foods Co.*, 2017 U.S. Dist. LEXIS 223446, at *17 (C.D. Cal. Dec. 21, 2017). Here, Class membership can and has been objectively determined through PMC's subscription and billing records. *See* SA ¶ 3.7; *see also Jerry Beeman & Pharmacy Servs. v. TDI Managed Care Servs.*, 2016 U.S. Dist. LEXIS 197191, at *27 (C.D. Cal. Nov. 9, 2016) (quoting *Hofstetter v. Chase Home Finance, LLC*, 2011 U.S. Dist. LEXIS 38124, at *34 (N.D. Cal. Mar. 31, 2011)) (ascertainability satisfied because "all the parameters for membership in this class are objective criteria, and [defendant's] business records should be sufficient to determine the class membership status of any given individual").

---

[9] It is not feasible to provide back issues to all Class Members because PMC does not print and store excess copies.

**B.     The Settlement Class Satisfies the Requirements of Rule 23(a).**

**1.     The Settlement Class members are too numerous to be joined.**

Rule 23(a)(1) requires the class to be large enough that joinder of all members is impracticable and is generally satisfied when the class exceeds forty members. *E.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). Here, records indicate that there are approximately 15,450 Settlement Class Members. SA ¶ 3.7. Numerosity is satisfied.

**2.     There are common questions of law and fact.**

Rule 23(a)(2) requires that there are "questions of law or fact common to the class." "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Lopez*, 2025 U.S. Dist. LEXIS 270892, at *12-13. "Even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

The common questions here include: whether PMC entered into lifetime subscription contracts with Settlement Class Members; whether PMC breached its agreements with Settlement Class Members; and whether PMC's representations that the e-Edition satisfied its obligations violated the CLRA. Answering these questions would generate common answers "apt to drive the resolution of the litigation" for the Settlement Class as a whole. *Wal-Mart Stores, Inc.*, 564 U.S. at 350; *see also In re GEICO Gen. Ins. Co.*, 2022 U.S. Dist. LEXIS 134404, at *13 (N.D. Cal. July 28, 2022) (finding commonality satisfied for a breach of contract claim); *Martin v. Toyota Motor Credit Corp.*, 2022 U.S. Dist. LEXIS 154677, at *15 (C.D. Cal. July 13, 2022) (similar). Commonality is satisfied.

**3.     Plaintiffs' claims are typical of the Settlement Class.**

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "To demonstrate typicality, the class representative's claims must be 'reasonably co-extensive with those of absent class members' although 'they need not be substantially identical.'" *Ruffulo v.*

16

*Farmers Ins. Exch.*, 2026 U.S. Dist. LEXIS 4732, at \*17 (C.D. Cal. Jan. 5, 2026) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here the Class Representatives' claims arise from the same conduct that gives rise to all Settlement Class Members' clams—PMC's decision to cease mailing *Rolling Stone* Magazine to lifetime subscribers. *See, e.g.*, *id.* at \*17-18 (finding typicality satisfied where the plaintiffs' "claims arise from the same nucleus of facts as those of the class and are based on the same legal theories."); *Aikens v. Cisneros*, 2019 U.S. Dist. LEXIS 131939, at \*11 (C.D. Cal. July 31, 2019) ("Their claims arise from the same practice or course of conduct.").

### 4.    Plaintiffs and Class Counsel have and will fairly and adequately protect the interests of the class.

Rule 23(a)(4) tests whether the "representative parties will fairly and adequately protect the interests of the class." "Representation is adequate when the class representative and counsel do not have any conflicts of interest with other class members, and the representative plaintiff and counsel will prosecute the action vigorously on behalf of the class." *Zubia v. Shamrock Foods Co.*, 2017 U.S. Dist. LEXIS 223446, at \*22-23 (C.D. Cal. Dec. 21, 2017).

First, there are no conflicts of interest between the Class Representatives and Class Counsel, on the one hand, and Settlement Class Members, on the other hand. Mathews Decl. ¶ 21. Second, Class Counsel are experienced class action litigators who have vigorously prosecuted this case on behalf of the Settlement Class, as is evidenced by the excellent relief obtained here. *See id.* ¶¶ 2-3 & Exs. B-C.

### C.    The Settlement Class Meets the Requirements of Rule 23(b)(3).

In addition to the Rule 23(a) requirements, a class must meet the predominance and superiority requirements of Rule 23(b)(3).

To certify a class under Rule 23(b)(3), the Court must find that: "[T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly

and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[Predominance] does not require plaintiffs to prove that every element of a claim is subject to classwide proof: they need only show that common questions predominate over questions affecting only individual class members." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 469 (2013) (cleaned up).

Here, the terms under which PMC sold lifetime subscriptions to Settlement Class Members and whether PMC breached its agreements with Settlement Class Members are common, predominating questions that drive each Class Members' claims. *See, e.g.*, *Zubia v. Shamrock Foods Co.*, 2017 U.S. Dist. LEXIS 223446, at *24 (C.D. Cal. Dec. 21, 2017) (predominance satisfied based on "common nucleus of facts and potential legal remedies dominates the litigation"); *In re GEICO Gen. Ins. Co.*, 2022 U.S. Dist. LEXIS 134404, at *16-17 (N.D. Cal. July 28, 2022) ("[C]ommon questions of contract interpretation and application raised by Plaintiffs' claims predominate over individualized issues.").

The proposed Settlement Class also satisfies the superiority requirement, which inquiry asks whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)(A)-(C).[10] Here, because an individual Class Member's claims are small, Class Members would be unlikely to pursue individual actions against PMC or have any meaningful interest in controlling separate litigations, and doing so would be inefficient and waste judicial resources. *Zubia v. Shamrock Foods Co.*, 2017 U.S. Dist. LEXIS 223446, at *25-26 (C.D. Cal. Dec. 21, 2017) ("The Ninth Circuit has recognized that class actions are not only preferable, but realistically the only economically feasible course of recovery where there are multiple claims for relatively small sums against the same defendant."); *Scurlock v. Syneos Health United States, Inc.*, 2025 U.S. Dist. LEXIS 216076, at *22 (C.D. Cal. Apr. 7, 2025) (citation omitted) ("[T]he filing of separate suits by nearly 2,000 class members ... would create an unnecessary burden on judicial resources.").

---

[10] The manageability criterion, Rule 23(b)(3)(D), is not relevant to a settlement class because "the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

**VI.    The Court Should Approve the Proposed Form and Method of Class Notice.**

Once a Court determines that notice is warranted because it is likely to approve the Settlement and certify the Settlement Class, Rule 23(e)(1)(B) directs that notice be issued to the Class. Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by ... United States mail, electronic means, or other appropriate means."

As to the content of the notice, it must contain all information listed in Rule 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill.*, 361 F.3d at 575.

The proposed Notice Plan fully complies with Rule 23 and due process, and it is the best notice practicable under the circumstances. First, the Short Form Notice will be sent by mail to each Settlement Class Member's last known subscription address, as updated in USPS's National Change of Address Database, *and by* email to each Settlement Class Member. *See, e.g.*, *Carmona v. Dominos Pizza LLC*, 2025 U.S. Dist. LEXIS 268838, at *34 (C.D. Cal. Dec. 22, 2025) (approving notice "via U.S. mail and email when available, and the notice will also be posted to the settlement website"); *Hoover v. Asm Glob. Parent, Inc.*, 2025 U.S. Dist. LEXIS 171808, at *6 (C.D. Cal. Sep. 3, 2025) (approving mailed and emailed notice to class members in defendant's records after "updat[ing] mailing addresses through the National Change of Address registry"). Here, where class members are subscribers to print, mailed editions of the magazine, a combination of mailed and emailed notice is the best notice practicable. *See, e.g.*, *Davis v. Clients on Demand, LLC*, 2025 U.S. Dist. LEXIS 216490, at *5-6 (C.D. Cal. Sep. 2, 2025) ( "Because class members signed up for Clients on Demand's eight-week program online, the use of email addresses provided by Defendants' clients as the primary contact, and addresses provided by clients as the secondary contact, is well-suited to reach a majority of class members.").

19

Second, the forms of notice comply with Rule 23(c)(2). In plain language, the Short Form Notice and the Long Form Notice, which will be available on the Settlement Website, collectively inform class members of: (i) the nature of the action; (ii) the class definition; (iii) the class claims and issues; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion or submitting objection; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2); *see also, e.g.*, *Hoover*, 2025 U.S. Dist. LEXIS 171808, at *5-6 (approving notice that included a "Short Notice, [which] will direct recipients to the Settlement Website where they may view the Long Form Notice ....").

Finally, the notices comply with Rule 23(h)(1) by informing Settlement Class Members that Class Counsel intends to seek attorneys' fees and costs of up to $525,000, to be paid separately from the Class benefits, and the motion for Attorneys' Fees and Costs Award will be available on the Settlement Website. *See* SA Exs. 1-3; PAO ¶ 30.

**VII.    Proposed Schedule of Settlement Events**

In connection with preliminary approval, the Court must also set a final Fairness Hearing and other relevant Settlement deadlines. Plaintiffs propose the following schedule, which the parties believe will provide ample opportunity for Settlement Class Members to decide whether to request exclusion or object:

| Event | Deadline Pursuant to Settlement or Proposed PAO |
|---|---|
| Preliminary Approval Hearing | March 27, 2026 at 10:00am |
| Settlement Website Established | _____ [7 days after entry of PAO] |
| Notice Date | _____ [30 days after entry of PAO] |
| Motion for Attorneys' Fees and Costs Award and Service Award | _____ [45 days after entry of PAO] |
| Motion for Final Approval | _____ [45 days after entry of PAO] |
| Opt-Out/Exclusion Deadline | _____ [60 days after entry of PAO] |
| Objection Deadline | _____ [75 days after entry of PAO] |

20

| Event | Deadline Pursuant to Settlement or Proposed PAO |
|---|---|
| Reply Brief in Support of Attorneys' Fees and Costs Award and Service Awards | _____ [14 days before Fairness Hearing] |
| Reply Brief in Support of Final Approval | _____ [14 days before Fairness Hearing] |
| Fairness Hearing | July 10, 2026 at 10:00am [or another date/time the Court selects that is at least 98 days after entry of PAO] |

## VIII. Conclusion

Plaintiffs respectfully request that the Court grant preliminary approval of the Class Action Settlement in substantially the similar form as the proposed order submitted herewith.

Dated: February 24, 2026

By: /s/ James C. Shah
James C. Shah (SBN 260435)
Kolin C. Tang (SBN 279834)
MILLER SHAH LLP
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Phone: 866-540-5505
Fax: 866-300-7367
jcshah@millershah.com
kctang@millershah.com

Timothy N. Mathews (*pro hac vice*)
Zachary P. Beatty (*pro hac vice*)
CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP
361 West Lancaster Avenue
Haverford, PA 19041
Phone: 610-642-8500
Fax: 610-649-3633
tnm@chimicles.com
zpb@chimicles.com

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,951 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 24, 2026                              By:    */s/ James C. Shah*
                                                                            James C. Shah

                                                                            Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I certify that on February 24, 2026, a copy of the foregoing was served electronically through the court's electronic filing system upon all parties appearing on the Court's CM/ECF service list.

Dated: February 24, 2026

By:     */s/ James C. Shah*
James C. Shah

Counsel for Plaintiffs